IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SHAWNN NAHKAHYEN-CLEARSAND,<br><br>             Plaintiff,<br><br>      vs.<br><br>LINCOLN REGIONAL CENTER, A State Psychiatric Hospital; DENNIS CONNELLY, Dr. - In their Individual and Official Capacities; and THERESA HANSEN, RN - In their Individual and Official Capacities;<br><br>             Defendants. | 4:17CV3074<br><br>MEMORANDUM<br>AND ORDER |

Plaintiff filed a Complaint on June 19, 2017. (Filing No. 1.) He has been given leave to proceed in forma pauperis. (Filing No. 5.) The court now conducts an initial review of Plaintiff's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

## I. SUMMARY OF COMPLAINT

Plaintiff is confined at the Lincoln Regional Center ("LRC") as a dangerous sex offender. (Filing No. 1 at CM/ECF p. 1.) He alleges that he has been diagnosed with anti-social personality disorder and substance abuse disorder. (*Id.* at CM/ECF p. 4.) He names in his Complaint: LRC, Dr. Dennis Connelly ("Dr. Connelly"), and Theresa Hansen ("Hansen"). (*Id.* at CM/ECF pp. 1-2.) He sues Connelly and Hansen in their official and individual capacities. (*Id.* at CM/ECF pp. 3-4.) He seeks declaratory, injunctive, and monetary relief. (*Id.* at CM/ECF pp. 10-12.)

On August 6, 2016, while playing football, Plaintiff broke the fifth metatarsal bone in his right foot. (*Id.* at CM/ECF pp. 5-6.) Hansen, a registered nurse, examined Plaintiff that same day. (*Id.* at CM/ECF p. 5.) Believing that Plaintiff's foot was sprained, Hansen provided Plaintiff an ice pack and crutches. (*Id.*) Plaintiff contends the crutches were too tall for him. (*Id.*) Two days later, on August 8th, Dr. Connelly examined Plaintiff and ordered x-rays. (*Id.*) Three days later, on August 11th, Plaintiff learned that the x-rays showed he broke the fifth metatarsal bone in his right foot. (*Id.*) Plaintiff alleges that, the following two days, he asked Hansen "to be put in a boot or something." (*Id.* at CM/ECF p. 6.) Hansen denied Plaintiff's requests and told him that she and Dr. Connelly agreed that Plaintiff had to wait to discuss the issue Dr. Bozart at his appointment on August 16th. (*Id.*) Plaintiff claims Defendants' actions constituted deliberate indifference because he was denied adequate treatment and that denial resulted in "significant physical and emotional pain and suffering." (*Id.*)

On August 16th, Dr. Bozart placed Plaintiff's foot in a boot. (*Id.*) On November 8, 2016, Dr. Bozart informed Plaintiff that he needed surgery for his foot because it did not heal properly. (*Id.*) On November 24, 2016, Plaintiff asked Hansen if the date had been set for his surgery. (*Id.* at CM/ECF p. 7.) Hansen replied to Plaintiff that no one had time to call to schedule it. (*Id.*) Plaintiff states that, during this time, a minimum wage job was given to another because of Plaintiff's foot. (*Id.*) On December 8, 2016, Plaintiff had surgery on his foot. (*Id.*)

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 for Fourteenth Amendment violations. (*Id.* at CM/ECF pp. 7-8.) He claims Defendants denied him medical care because they were aware that he needed to be immediately taken to the hospital or that the movement of his foot needed to be restricted after the x-rays showed it to be broken. (*Id.*) He also brings this action pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act ("RA"). (*Id.* at CM/ECF pp. 2, 8.) He states he has "mental health diagnoses, injured right foot, . . . is substantially limited in movement in activities, [a]nd deals frequently with pain." (*Id.* at CM/ECF p. 8.) He

2

claims LRC discriminated against him in violation of Title II of the ADA and the RA "for failing to provide reasonable accommodations and/or modifications of policies to rec[ei]ve healthcare and by failing to provide healthcare in the most integrated setting appropriate to [his] needs." (*Id*. at CM/ECF pp. 2, 8.)

## II.  APPLICABLE STANDARDS OF REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e)(2). The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

## III.  DISCUSSION

### A.  Official Capacity Section 1983 Claims

The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g., Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g., id.*; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). Congress did not abrogate the states' sovereign immunity when it enacted 42 U.S.C. § 1983. *Smith v. Beebe*, 123 F. Appx 261, 262 (8th Cir. 2005) (unpublished) (citations omitted). Sovereign immunity does not bar damages claims against state officials acting in their personal capacities, nor does it bar claims brought pursuant to 42 U.S.C. §1983 that seek equitable relief from state employee defendants acting in their official capacity.

Plaintiff sues LRC, a branch of the Nebraska Department of Health and Human Services - a state instrumentality, and two purported LRC employees for monetary relief. Plaintiff's § 1983 claims for monetary relief against Defendants must be dismissed pursuant to the Eleventh Amendment.

### B.  Individual Capacity Section 1983 Claims

Under the Due Process Clause of the Fourteenth Amendment, involuntarily committed persons retain substantive liberty interests, which include the rights to adequate food, shelter, clothing, and medical care; safe conditions of confinement; and freedom from unnecessary bodily restraint. *Youngberg v. Romeo*, 457 U.S. 307, 315-316 (1982). To determine whether the nature and extent of an infringement of a liberty interest rises to the level of a due process violation, the

court must balance the individual's liberty interest against relevant state interests. *Id*. at 320-321.

"[W]here a [civilly-committed] patient's Fourteenth Amendment claim is for constitutionally deficient medical care, we apply the deliberate indifference standard from the Eighth Amendment." *Mead v. Palmer*, 794 F.3d 932, 936 (8th Cir. 2015) (quotation marks and citation omitted); *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004) (recognizing that Fourteenth Amendment applied to involuntarily committed patient's § 1983 claims, but applying Eighth Amendment standards because patient's "confinement is subject to the same safety and security concerns as that of a prisoner").

The Eighth Amendment deliberate indifference standard includes both an objective and a subjective component. Plaintiff must demonstrate that (1) he suffered from objectively serious medical needs, and (2) Defendants knew of, but deliberately disregarded, those needs. *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016), as amended (Mar. 4, 2016). "A medical condition is 'objectively serious' if the prisoner was diagnosed by a doctor or it is so obvious that a lay person would recognize the medical need." *Id*. "The subjective prong of deliberate indifference is an extremely high standard that requires a mental state of more ... than gross negligence. It requires a mental state akin to criminal recklessness." *Id.*

Dr. Connelly and Hansen were not deliberately indifferent to Plaintiff's objectively serious medical need, his broken foot. Plaintiff's allegations are not that he was denied medical treatment. They are that he did not receive "adequate" or his preferred treatment immediately. Hansen examined Plaintiff the same day of his injury. She gave him an ice pack and crutches. Dr. Connelly ordered x-rays just two days later. They contacted Dr. Bozart, who the court infers is a specialist. They concluded that Dr. Bozart would determine if any further treatment would be necessary. Dr. Bozart placed Plaintiff's foot in a boot five days after Plaintiff learned his foot was broken. While Plaintiff's allegations against Dr. Connelly and Hansen may be enough to state a plausible claim for negligence or medical

malpractice, they are not enough to state a plausible claim for deliberate indifference in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (holding that mere negligence or medical malpractice are insufficient to rise to a constitutional violation); *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (mere disagreement with treatment decisions does not rise to the level of a constitutional violation); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988) ("Physicians are entitled to exercise their medical judgment.") (citation omitted).[1]

## C. ADA and Rehabilitation Act Claims

Disability discrimination is prohibited by federal statute. Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, prohibits qualified individuals with disabilities from being excluded from participation in or the benefits of the services, programs, or activities of a public entity. *Randolph v. Rodgers*, 170 F.3d 850, 857 (8th Cir. 1999).[2] To state a prima facie claim under Title II of the ADA, a plaintiff must

---

[1] There was a one-month delay between when Plaintiff learned he needed surgery and the surgery itself. Plaintiff does not allege that Dr. Bozart advised Plaintiff that he needed emergency surgery; that Dr. Connelly or Hansen failed to respond to Plaintiff's complaints of pain; or that the one-month delay in surgery aggravated his condition. *See Moots v. Lombardi*, 453 F.3d 1020, 1023 (8th Cir. 2006) (inmate claiming deliberate indifference based on delay in treatment must allege that delay caused harm); *see also Fletcher v. Butts*, 994 F.2d 548 (8th Cir. 1993) (one-month delay between the recommendation for a non-emergency surgery and surgery not unreasonable); *Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990) (no deliberate indifference without allegation that the defendants ignored an acute or escalating situation involving the prisoner's serious medical condition). Plaintiff's only allegation is that a minimum wage job was given to another during that time because of Plaintiff's foot.

[2] Section 504 of the RA similarly provides that "[n]o otherwise qualified individual with a disability ... shall ... be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a) (2000). The enforcement, remedies, and rights are the same under both Title II of the ADA and

show: 1) he is a qualified individual with a disability; 2) he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the entity; and 3) that such exclusion, denial of benefits, or other discrimination, was by reason of his disability. *See* 42 U.S.C. § 12131 *et seq.*; *see also Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998).[3]

A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities ... (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). A physical impairment is "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1). A mental impairment is "Any mental or psychological disorder, such as an intellectual disability (formerly termed "mental retardation"), organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2). "[M]ajor life activities

---

§ 504 of the RA. *See Hoekstra v. Independent Sch. Dist. No. 283*, 103 F.3d 624, 626 (8th Cir. 1996).

[3] The RA contains the additional requirement that the plaintiff show the program or activity from which he is excluded receives federal financial assistance. *See Gorman v. Bartch*, 152 F.3d 907, 911 (8th Cir. 1998); *Thomlison v. City of Omaha*, 63 F.3d 786, 788 (8th Cir. 1995). Because federal funding is not alleged, Plaintiff's Complaint does not state a claim for relief under the RA.

7

include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," as well as operations of major bodily functions. *See* 42 U.S.C. § 12102(2). "Not every impairment will constitute a disability within the meaning of this section." 29 C.F.R. § 1630.2(j)(ii).

Plaintiff alleges that LRC discriminated against him with regard to its healthcare. Plaintiff fails to allege sufficient information for the court to discern whether he is a "qualified individual with a disability." *See Orr v. City of Rogers*, No. 5:15-CV-05098, 2017 WL 477722, at *7–8 (W.D. Ark. Feb. 3, 2017), *reconsideration denied*, No. 5:15-CV-05098, 2017 WL 772913 (W.D. Ark. Feb. 27, 2017) (finding the weight of authority to be that broken bones and similar injuries are not treated as disabilities under the ADA). In fact, beyond the injury itself and the treatment for it, Plaintiff's alleges only that he has "mental health diagnoses, injured right foot, . . . is substantially limited in movement in activities, [a]nd deals frequently with pain." *See Iqbal*, 556 U.S. at 678 ("formulaic recitation of the elements" and "naked assertion[s]" are insufficient) (citation omitted). Moreover, Plaintiff's claims are premised on his assertion that he did not receive healthcare in the manner and location of his preference. A lawsuit under the ADA cannot be based on medical treatment decisions. *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005).

Plaintiff also may be asserting that he was "excluded from participation in or the benefits of the services, programs, or activities of [LRC]" when a minimum wage job was given to another because of Plaintiff's foot. The court is not so sure that paid employment at LRC fits the definition of "services, programs, or activities" under Title II. *See Neisler v. Tucker*, 807 F.3d 225, 227 (7th Cir. 2015) (explaining the difference between paid employment and a vocational program that benefits a prisoner); *see also Brumfield v. City of Chicago*, 735 F.3d 619, 626 (7th Cir. 2013) ("[E]mployment is not ordinarily conceptualized as a 'service, program, or activity' of a public entity."). If paid employment is considered a service,

program, or activity that LRC provides to its patients, Plaintiff alleges no details of the position; if he could perform the position with or without reasonable accommodations; or that he was denied work entirely because of his foot. Nevertheless, as previously discussed, Plaintiff fails to allege sufficient information for the court to discern whether he is a "qualified individual with a disability."

On its own motion, the court will allow Plaintiff 30 days to file an amended complaint that states a claim upon which relief may be granted. However, the court warns Plaintiff that failure to correct the foregoing deficiencies will result in dismissal of this action **with prejudice** pursuant to Federal Rule of Civil Procedure 41(b). This is because the court informed Plaintiff in a recent case of many of these same deficiencies. *See Nahkahyen-Clearsand v. Department of Health & Human Services et al.*, Filing No. 8, Case No. 8:17-cv-00043 (D. Neb. 2017). Plaintiff did not correct them in his Amended Complaint filed in that case, *id.* at Filing No. 9, and the court dismissed the matter without prejudice. *Id.* at Filing No. 12.[4] The court will grant Plaintiff one more opportunity to state a plausible claim.

IT IS THEREFORE ORDERED that:

1. Plaintiff will have until **August 24, 2017**, to file an amended complaint that states a claim upon which relief may be granted against Defendants. Failure to file an amended complaint no later than that date will result in dismissal of this action **with prejudice** pursuant to Federal Rule of Civil Procedure 41(b).

2. Plaintiff's § 1983 claims for monetary relief against Defendants in their official capacities are dismissed as barred by the Eleventh Amendment.

---

[4] The court also notes that it conducted for the first time an analysis of Plaintiff's individual capacity § 1983 claims in this Memorandum and Order.

3. The clerk's office is directed to set a pro se case management deadline using the following text: **August 24, 2017**: check for amended complaint.

Dated this 25th day of July, 2017.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge